# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

BRIAN DEVERICK LEWIS, CDCR #J-49028,

       Plaintiff,

v.

R. DAVIS; SANCHEZ.

       Defendants.

Case No. 19-cv-1060-BAS-MSB

**ORDER:**

**(1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS* [ECF No. 2]**

**AND**

**(2) DISMISSING CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM**

   Plaintiff, Brian Deverick Lewis, an inmate currently incarcerated at Corcoran State Prison ("CSP") located in Corcoran, California has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) In addition, Plaintiff has filed a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2). For the reasons herein, the Court grants Plaintiff's IFP motion and, pursuant to a mandatory screening of the Complaint, dismisses Plaintiff's claims against Defendant Davis for failure to state a claim based on the statute of limitations. The Court finds that Plaintiff has stated First Amendment claims against Defendant Sanchez.

## A. Plaintiff's IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for. . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

19cv1060

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by a trust account official at CSP. (ECF No. 2 at 4, 6–8); 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show that Plaintiff carried an average monthly balance of $416.38, maintained $406.41 in average monthly deposits to his trust account for the 6-months preceding the filing of this action, and had an available balance of $398.99 to his credit at the time of filing. (ECF No. 2 at 4, 7.)

Therefore, the Court grants Plaintiff's motion to proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $83.28 pursuant to 28 U.S.C. § 1915(b)(1). The Court further directs the Secretary of the CDCR, or his designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**B.     Mandatory Screening Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that

the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

### 1. Plaintiff's Allegations

Plaintiff was previously housed at the Richard J. Donovan Correctional Facility ("RJD") in 2014. (*See* Compl. at 9.) On September 11, 2014, Defendant Davis "called Plaintiff to his office in order to conduct at [sic] Rules Violation Report ("RVR")" that had been issued to Plaintiff in August of 2014. (*Id.*) At the hearing, Davis was the "Senior Hearing Officer ("SHO")" and Plaintiff claims the hearing became "contentious between Plaintiff and Davis." (*Id.*) Plaintiff "objected" to Davis's guilt finding and "assessing him 10 days of continuous confinement to his quarters ("CTQ")." Plaintiff alleges that five days prior to the RVR hearing, Davis had already "assessed Plaintiff 10 days of CTQ." (*Id.*) Davis responded to Plaintiff's objection by purportedly saying "I don't care, you're guilty, you're getting another 10 days." (*Id.*) Plaintiff claims he ultimately served "15 continuous days on CTQ status" which he alleges "violate[s] CDCR regulations." (*Id.*)

Plaintiff's RVR hearing was found to be "invalid and the CDCR ordered it to be reissued and reheard." (*Id.*) Davis "called Plaintiff to his office to rehear the RVR" on October 11, 2014. (*Id.*) J. Meza, Plaintiff's staff assistant, "came to Plaintiff's cell and told Plaintiff that Davis wanted to hear the RVR." (*Id.*) Plaintiff "told Meza that Davis

4

19cv1060

the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

### 1. Plaintiff's Allegations

Plaintiff was previously housed at the Richard J. Donovan Correctional Facility ("RJD") in 2014. (*See* Compl. at 9.) On September 11, 2014, Defendant Davis "called Plaintiff to his office in order to conduct at [sic] Rules Violation Report ("RVR")" that had been issued to Plaintiff in August of 2014. (*Id.*) At the hearing, Davis was the "Senior Hearing Officer ("SHO")" and Plaintiff claims the hearing became "contentious between Plaintiff and Davis." (*Id.*) Plaintiff "objected" to Davis's guilt finding and "assessing him 10 days of continuous confinement to his quarters ("CTQ")." Plaintiff alleges that five days prior to the RVR hearing, Davis had already "assessed Plaintiff 10 days of CTQ." (*Id.*) Davis responded to Plaintiff's objection by purportedly saying "I don't care, you're guilty, you're getting another 10 days." (*Id.*) Plaintiff claims he ultimately served "15 continuous days on CTQ status" which he alleges "violate[s] CDCR regulations." (*Id.*)

Plaintiff's RVR hearing was found to be "invalid and the CDCR ordered it to be reissued and reheard." (*Id.*) Davis "called Plaintiff to his office to rehear the RVR" on October 11, 2014. (*Id.*) J. Meza, Plaintiff's staff assistant, "came to Plaintiff's cell and told Plaintiff that Davis wanted to hear the RVR." (*Id.*) Plaintiff "told Meza that Davis

4

19cv1060

had abused his authority" in the previous RVR hearing. (*Id.* at 10.) Plaintiff asked Meza to postpone the hearing "so that Plaintiff could go before a different SHO." (*Id.*) Meza "told Plaintiff he would try to get the hearing moved" but ten minutes later he "returned to Plaintiff's cell" and told Plaintiff that Davis denied his request. (*Id.*) Davis also purportedly told Meza that "he would be holding the hearing with or without Plaintiff and that Plaintiff would be found guilty." (*Id.*) Plaintiff told Mesa "he wasn't coming to the hearing." (*Id.*)

Meza later returned to Plaintiff's cell and informed him that "Davis said that if Plaintiff did not 'show up' for the hearing then he would put Plaintiff on C-status." (*Id.*) Plaintiff "still refused." (*Id.*) On October 11, 2014, "Davis found Plaintiff guilty of the RVR" and ordered that "Plaintiff be put on C-status," as well as placing Plaintiff "on CTQ status for 60 days." (*Id.*)

"In 2014, Plaintiff had been ordered by the CDCR to participate in weekly urinalysis testing." (*Id.*) In 2016, Plaintiff would "submit a urine sample to Defendant Sanchez" every Tuesday. (*Id.*) Sanchez is the RJD "designated employee that collects urine samples for testing from RJD inmates." (*Id.*) On the day the sample is given, Sanchez "gives each inmate a warning that they have 3 hours in which to submit a sample." (*Id.* at 11.) Plaintiff was assigned to the "RJD Facility A culinary on the early a.m. shift." (*Id.*) Plaintiff claims he would "routinely request to be released from his job assignment at 8:30 a.m. and would then report to Sanchez to inquire if, in fact, he was conducting urinalysis testing that day." (*Id.*)

On February 3, 2016, Plaintiff "submitted his sample to Sanchez." (*Id.*) However, Sanchez was "collecting samples inside of the housing unit," rather than the "approved and designated" testing site in "violation of [Department Operations Manual] and protocols." (*Id.*) Plaintiff claims that "CDCR protocols" require Sanchez to "take certain steps, universal precautions" when "conducting/collecting the sample." (*Id.*) These protocols are to "maintain, protect and preserve the integrity of the test and testing site." (*Id.*) Plaintiff alleges that Sanchez "violated several protocols in administering the urinalysis

test" on February 3, 2016. (*Id.*) Specifically, Plaintiff claims Sanchez: "(1) failed to conduct the test at the designated testing site, (2) failed to decontaminate the testing area prior to administering the test, (3) failed to personally collect the test, and (4) allowed non-testing inmates to access the testing area." (*Id.* at 11-12.)

On February 17, 2016, Plaintiff and a "host of other CDCR inmates" who had been tested on February 3, 2016 "began to receive positive results from the test." (*Id.* at 12.) Plaintiff was "issued an RVR for a positive test result." (*Id.*) An RVR hearing was held on March 16, 2016 and Plaintiff "pled not guilty." (*Id.*) Plaintiff called Sanchez as a witness and "raised a defense that the positive results" were due to "Sanchez's failure to follow CDCR" policy and procedures. (*Id.*) Sanchez "admitted in the hearing that the RVR contained false facts." (*Id.*) Plaintiff alleges that Sanchez "became physically upset" and "established that he in fact failed to follow the mandates" of CDCR policy in administering the tests. (*Id.*) Plaintiff "was found guilty at the conclusion of the hearing." (*Id.*) When Plaintiff "exited the Facility A program office," he claims "Sanchez was outside waiting for [him]." (*Id.*) Plaintiff alleges Sanchez told him "you [expletive] up telling my boss I'm not doing my job" and "walked off." (*Id.* at 12-13.)

One week later, Plaintiff "went to his housing unit looking for Sanchez" and was told that "Sanchez was in the building earlier but had left." (*Id.* at 13.) Plaintiff "went to the designated testing area" but was told "Sanchez had been there earlier conducting [urinalysis tests] but had left." (*Id.*) Plaintiff ultimately found Sanchez in the "Facility A program office" and informed him that "he had been wanting to submit his test." (*Id.*) Sanchez told Plaintiff to "wait in front of the program office." (*Id.* at 14.) Sanchez "emerged from the program office" and told Plaintiff "see, I told you, you [expletive] up, you refused to piss." (*Id.*) Plaintiff disputed this assertion and told Sanchez that "he didn't refuse" but that he had actually been looking for Sanchez to conduct the test. (*Id.*) Plaintiff alleges Sanchez responded, "times up, you refused." (*Id.*)

On March 22, 2016, Sanchez "wrote Plaintiff an RVR for refusing to submit" to a urinalysis. (*Id.*) A hearing was held on the RVR on April 1, 2016. (*See id.*) Plaintiff

claimed at the hearing that Sanchez "retaliated against [him]" because "Plaintiff had complained to Sanchez's supervisor." (*Id.*) Plaintiff was initially found guilty but later the "Chief Disciplinary Officer" found Plaintiff "not guilty of the charge and dismissed the RVR in the interest of justice." (*Id.*)

**2.      42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

**3.      Statute of Limitations**

Plaintiff's claims arise against Defendant Davis from the time he was issued an RVR and subjected to a disciplinary hearing in 2014. (*See* Compl. at 9–10.). "A claim may be dismissed [for failure to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "'A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276–77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on the face of a complaint, dismissal for failure to state a claim is proper, so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (court may raise the defense of statute of limitations sua sponte), *overruled on other grounds by Gonzalez v. Arizona*, 677

F.3d 383, 389 (9th Cir. 2011) (en banc); *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (upholding sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B) of prisoner's time-barred complaint).

Because section 1983 contains no specific statute of limitation, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Before 2003, California's statute of limitations was one year. *Jones*, 393 F.3d at 927. Effective January 1, 2003, the limitations period was extended to two. *Id.* (citing CAL. CIV. PROC. CODE § 335.1). The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989)); *Jones*, 393 F.3d at 927 (noting that in actions where the federal court borrows the state statute of limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law).

Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for two years. CAL. CIV. PROC. CODE § 352.1(a); *Johnson v. California*, 207 F.3d 650, 654 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005). Accordingly, the effective statute of limitations for most California prisoners is three years for claims accruing before January 1, 2003 (one-year limitations period plus two-year statutory tolling), and four years for claims accruing thereafter (two-year limitations period plus two years statutory tolling). In addition, the limitations period for prisoners is tolled while the "prisoner completes the mandatory exhaustion process." *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005).

Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *Hardin*, 490 U.S. at 543-44 (federal law governs when a § 1983 cause of action accrues). "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391. Put another way, "[u]nder federal law, a

claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

Here, Plaintiff's claims against Davis accrued in 2014. (*See* Compl. at 9–10.) Thus, assuming Plaintiff is not serving a life sentence, he is entitled to an additional two (2) years of statutory tolling pursuant to CAL. CIV. PROC. CODE § 352.1(a). *Johnson*, 207 F.3d at 654; *see also Jones*, 393 F.3d at 928 n.5 (noting that "California courts have read out of the statute the qualification that the period of incarceration must be 'for a term less than for life' in order for a prisoner to qualify for tolling."). Consequently, based on the face of Plaintiff's own pleading, it is clear Plaintiff's claims fall far outside California's two-year statute of limitations, even including all presumed periods of tolling provided by statute. *See Wallace*, 591 U.S. at 391; *Maldonado*, 370 F.3d at 955; CAL. CODE CIV. PROC. § 335.1 (tolling statute of limitations "for a maximum of 2 years" during a prisoner's incarceration).

Finally, Plaintiff's claims could be considered timely if, in his Complaint, he alleges facts sufficient to show the limitations period may be *equitably* tolled. *See Cervantes*, 5 F.3d at 1276–77. Generally, federal courts also apply the forum state's law regarding equitable tolling. *Fink*, 192 F.3d at 914; *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir.1988). Under California law, however, Plaintiff must meet three conditions to equitably toll the statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) Defendants must not be prejudiced by the application of equitable tolling. *See Hull v. Central Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1335 (Cal. Ct. App. 1994); *Addison v. State of California*, 21 Cal.3d 313, 31–17 (Cal. 1978); *Fink*, 192 F.3d at 916. As currently pleaded, however, the Court finds Plaintiff has failed to plead any facts which, if proved, would support any plausible claim for equitable tolling. *See Cervantes*, 5 F.3d at 1277; *Iqbal*, 556 U.S. at 679; *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (plaintiff carries the burden to plead facts which would give rise to equitable tolling); *see also Kleinhammer v. City of Paso Robles*, 385 Fed. App'x 642, 643 (9th Cir. 2010).

9

19cv1060

Accordingly, the Court finds the running of the statute of limitations is apparent on the face of Plaintiff's Complaint, and therefore he has failed to state any claim against Davis upon which section 1983 relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1).

### 4. Retaliation Claims against Sanchez

The Court finds Plaintiff's Complaint contains First Amendment allegations against Sanchez sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm,* 680 F.3d at 1123; *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

### 5. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the *sua sponte* screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his First Amendment retaliation claim against Sanchez only; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claim against Sanchez, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint and dismiss the remaining claims and defendant.

## CONCLUSION & ORDER

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiff's motion to proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from

Plaintiff's trust account the $83.28 initial filing fee assessed, if those funds are available at the time this Order is executed, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's claims against Davis for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the First Amendment retaliation claim against Sanchez only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Plaintiff shall take either action **no later than August 22, 2019**.

If Plaintiff chooses to file an Amended Complaint, the Court advises Plaintiff that Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

6. **DIRECTS** the Clerk of Court to mail to Plaintiff, together with this Order, a blank copy of the Court's form "Complaint under the Civil Rights Act, 42 U.S.C. § 1983" for his use in amending.

**IT IS SO ORDERED.**

**DATED: July 8, 2019**

Hon. Cynthia Bashant
United States District Judge